## BOBIE et al. v. LYKES BROS. S. S. CO., Inc.

### THE MARION LYKES.

United States District Court
S. D. Texas, Houston Division.

Feb. 9, 1953.

Bliss Daffan, of Houston, Tex., for libellants.

Royston & Rayzor and Robert Eikel, of Houston, Tex., for respondents.

KENNERLY, Chief Judge.

This is a suit in Admiralty by Libellants[1] against the Steamship Marion Lykes and her owners and operators for damages, etc., for their alleged wrongful and illegal discharge as seamen on such Steamship. It is claimed that they were discharged because of their refusal to work in excess of eight hours in one day.[2]

1. The libellants are: Nicholas Bobie, Chester Stolarek, and Efrain Vargas.

2. Paragraph 4 of the Libel is as follows:
"Libellants would show that they were each and all discharged by the respondent from said vessel for refusing to work in excess of eight hours in one day while the vessel was at sea on December 31, 1949, January 1, 1950, and January 2, 1950; that the overtime work involved was cleaning bilges, freeing scupper in cargo hold, and slushing gray pendants

and preventers. That requiring and ordering libellants to perform such work on overtime and to work in excess of eight hours per day was wrongful and illegal and contrary to and in violation of Section 673, Title 46, of the United States Code; that, therefore, libellants' discharge from said vessel was wrongful and illegal.

"In this connection, libellants allege that they each and all worked their regular watches at all times."

The suit is brought and Libellants claim the right to recover under Section 673, Title 46 U.S.C.A. as amended. The case has been tried on a Stipulation of Facts filed by the parties, the pertinent parts of which are referred to in the discussion.

1: Under Paragraph One[3] of such Stipulation, Libellants' case as set forth in their pleadings must fall. In such Stipulation, it is said that each Libellant *"duly served aboard the vessel and upon completion of the voyage on January 4, 1950, each was paid off, signing off articles, along with the rest of the crew."* In other words, it is stipulated that Libellants were *not* discharged from such Steamship, but retained their employment thereon until the end of the voyage. Since they were *not* discharged, Libellants are not entitled to recover damages, etc., as sued for in their pleadings.

2: However, it appears from the brief of Libellants that their real complaint is that because they refused to work more than 8 hours in any one day on such Steamship, they were denied employment for another or second voyage, and are, therefore, entitled to recover wages, etc., up to the time they were able to obtain other employment.[4]

The parties in their briefs discuss whether, under the Collective Bargaining Agreement between Respondents and the National Maritime Union (of which Libellants were members), Respondents were required to employ Libellants on such second voyage. The Stipulation shows four clauses from such Agreement,[5] which presumably are the controlling ones. It is perfectly clear therefrom that because Libellants, as stipulated, refused to work more than 8 hours in any one day, Respondents were *not* compelled to employ them on the second voyage. Such Articles provide that all employees must be satisfactory to Respondents.

3: But Libellants say that such Agreement is in conflict with Section 673, Title 46, of the Code, and must yield to the requirements thereof. They say that un-

---

3. Paragraph 1 of the Stipulation is as follows:

"That the libellants each signed shipping articles aboard the SS Marion Lykes at Houston on December 14, 1949; Bobie signed as deck maintenance, at wages of $237.84 per month; Stolarek as ordinary seaman, at $193.47 per month; and Vargas as able seaman, at $226.01 per month. The vessel was operated by Lykes Bros. Steamship Co., Inc. Each duly served aboard the vessel and upon completion of the voyage, on January 4, 1950, each was paid off, signing off articles, along with the rest of the crew. A copy of the articles is attached, as Exhibit 'A.' "

4. Presumably Libellants will amend their pleadings to cover this contention under Admiralty Rule 23, 28 U.S.C.A.

5. Paragraph 4 of the Stipulation is as follows:

"The collective bargaining agreement contains the following clauses:

"Article I, Section 3:

" ' * * * there shall be no lockouts of the unlicensed personnel. However, this section shall not prevent the orderly termination by the company of the employment of any or all of the unlicensed personnel on any vessels as and in the manner provided by the shipping articles nor shall it prevent the discharge of any member of the unlicensed personnel for just cause.'

"Article I, Section 6:

" 'The company agrees that during the period this agreement is in effect, all employment, except for the position set forth in Subsection (g), will be given to members of the Union when available in the Deck, Engine and Stewards' Departments provided that the prospective employes are satisfactory to the company.'

"Article I, Subsection (e):

" 'Whenever an employe furnished by the Union is deemed unsatisfactory to the company, the company shall promptly notify the Union of its decision not to accept and the Union agrees promptly to furnish a replacement.'

"Article XIV

"Statutory Laws, Rules And Regulations. "Section 1. 'The companies shall only be required to comply with the provisions of this agreement and the statutes and regulations thereunder in all matters relating to manning, quarters and equipment, construction and arrangement of the ship.' "

der Section 673, as amended, they are entitled to recover such wages, etc., as stated, from the time they were refused such employment for the second voyage up to the time that they were able to obtain other employment. I do not think so.[6] It will be observed that Section 673, as amended,[7] protects two classes of seamen in the matter of working hours. The first class is seamen on tugs who it is stated shall not be *required* or *permitted* to work more than eight hours in one day, etc. The second class is seamen generally who it is stated shall not be *required* to work more than eight hours in one day, etc. According to the Stipulation, Libellants were *requested* to work more than eight hours in one day, but *refused*. They worked only eight hours. They were not *required* to work within the meaning of Section 673.

But had Libellants been *required* to work more than eight hours in one day on the Steamship, that fact would not have compelled Respondents to employ them on the second voyage, nor entitled them to recover here. There is nothing in the wording of Section 673 that gives Libellants that right. Section 673 carries its own

6. A similar question arose under Section 673 prior to its amendment and was decided against Libellants' contention. The Youngstown, 5 Cir., 110 F.2d 968.

7. Section 673, Title 46 U.S.C.A., as amended, is as follows (italics mine):

"In all merchant vessels of the United States of more than one hundred tons gross, excepting those navigating rivers, harbors, lakes (other than Great Lakes), bays, sounds, bayous, and canals, exclusively, the licensed officers and sailors, coal passers, firemen, oilers, and water tenders shall, while at sea, be divided into at least three watches, which shall be kept on duty successively for the performance of ordinary work incident to the sailing and management of the vessel: Provided, That in the case of radio-telegraph operators this requirement shall be applicable only when three or more radio officers are employed. No licensed officer or *seaman* in the deck or engine department of any *tug* documented under the laws of the United States (except boats or vessels used exclusively for fishing purposes) navigating the Great Lakes, harbors of the Great Lakes, and connecting and tributary waters between Gary, Indiana; Duluth, Minnesota; Niagara Falls, New York; and Ogdensburg, New York, *shall be required or permitted to work more than eight hours in one day except in case of extraordinary emergency affecting the safety of the vessel, and/or life or property.* The seamen shall not be shipped to work alternately in the fireroom and on deck, nor shall those shipped for deck duty be required to work in the fireroom, or vice versa; *nor shall any licensed officer or seaman in the deck or engine department be required to work more than eight hours in one day;* but these provisions shall not limit either the authority of the master or other officer or the obedience of the seamen when in the judgment of the master or other officer the whole or any part of the crew are needed for maneuvering, shifting berth, mooring, or unmooring, the vessel or the performance of work necessary for the safety of the vessel, her passengers, crew, and cargo, or for the saving of life aboard other vessels in jeopardy, or when in port or at sea, from requiring the whole or any part of the crew to participate in the performance of fire, lifeboat, or other drills. While such vessel is in a safe harbor no seaman shall be required to do any unnecessary work on Sundays or the following-named days: New Year's Day, the Fourth of July, Labor Day, Thanksgiving Day, and Christmas Day, but this shall not prevent the dispatch of a vessel on regular schedule or when ready to proceed on her voyage. And at all times while such vessel is in a safe harbor, eight hours, inclusive of the anchor watch, shall constitute a day's work. *Whenever the master of any vessel shall fail to comply with this section and the regulation issued thereunder, the owner shall be liable to a penalty not to exceed $500, and the seamen shall be entitled to discharge from such vessel and to receive the wages earned.* But this section shall not apply to vessels engaged in salvage operations: Provided, That in all tugs and barges subject to this section when engaged on a voyage of less than six hundred miles, the licensed officers and members of crews other than coal passers, firemen, oilers, and water tenders may, while at sea, be divided into not less than two watches, but nothing in this proviso shall be construed as repealing any part of section 222 of this title. This section shall take effect six months after June 25, 1936."

penalty of $500 for its violation. Thereunder a seaman who is *required* to work more than eight hours in one day may be discharged and have his wages paid him and sue for such penalty. Libellants bring forward no reason why, if they are entitled to sue at all, they are not confined to a suit for the penalty prescribed by such Section.

Believing that under no theory presented, either by the pleadings or the briefs in this case, Libellants are entitled to recover from Respondents, Judgment will be rendered for Respondents.

Let appropriate Decree be drawn and presented.